UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CHRISTOPHER E. SERVEDIO,

                              Plaintiff,

        -against-

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
16-CV-4130 (JMA)

FILED
CLERK
7/5/2018 11:37 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Craig Joseph Tortora
Goldsmith & Tortora
2067 Jericho Turnpike
Commack, NY 11725
    *Attorney for Plaintiff*

Matthew Mailloux
United States Attorney's Office
Eastern District of New York
271-a Cadman Plaza East
Brooklyn, NY 11201
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

       Plaintiff Christopher E. Servedio challenges the decision of the Acting Commissioner of Social Security, who concluded, after a hearing before an Administrative Law Judge, that plaintiff is not disabled for purposes of receiving disability insurance benefits under Title II of the Social Security Act. The case is before the Court on the parties' cross-motions for judgment on the pleadings. For the reasons discussed herein, plaintiff's motion for judgment on the pleadings is GRANTED, the Commissioner's cross-motion for judgment on the pleadings is DENIED, and the case is REMANDED for proceedings consistent with this opinion.

1

# I. BACKGROUND

Plaintiff filed an application for social security disability insurance benefits under Title II of the Social Security Act (the "Act") on May 23, 2013, alleging that he was disabled as of December 14, 2012, due to paralyzed left hemi-diaphragm and phrenic nerve, and asthma. (Administrative Transcript ("Tr.") 90, 205-06, 227.) Plaintiff's application was denied on August 23, 2013. (Tr. 90, 100-11.) On September 16, 2013, plaintiff filed a timely request for a hearing. (Tr. 112-13.) On December 30, 2014, plaintiff appeared at a hearing, with counsel, before Administrative Law Judge Alan Berkowitz (the "ALJ"). (Tr. 23-61.) On March 9, 2015, the ALJ obtained medical interrogatories from a non-examining medical expert Osvaldo Fulco, M.D that Dr. Fulco prepared on February 27, 2015. (Tr. 272-73; 394-404.) A supplemental hearing was held before the ALJ on June 11, 2015, where plaintiff, his counsel, Dr. Fulco and Christina Boardman, a vocational expert, appeared. (Tr. 64-89.) In a decision dated July 10, 2015, the ALJ found that although plaintiff had severe impairments of "paralyzed diaphragm, asthma and a herniated lumbar disc," he was not disabled because he still retained the residual functional capacity ("RFC") to perform "sedentary work as defined in 20 CFR § 404.1567(a), except he can sit five hours in an eight hour workday, stand three hours, can lift ten pounds occasionally, and cannot push, pull, kneel, bend or stoop." (Tr. 7-22.)

Plaintiff filed a timely request for review before the Appeals Council on August 21, 2015. (Tr. 6.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on May 26, 2016. (Tr. 1-5.) This appeal followed.

## II. DISCUSSION

### A. Standard of Review

A district court may set aside the Commissioner's determination that a plaintiff is not disabled "only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). The district court does not determine *de novo* whether plaintiff is disabled. Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004). Rather, to the extent any findings are supported by substantial evidence, they "shall be conclusive." 42 U.S.C. § 405(g); see also Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). However, when an ALJ overlooks an important piece of evidence, remand may be appropriate to ensure the ALJ properly considered such evidence. See Carnevale v. Gardner, 393 F.2d 889, 890–91 (2d Cir. 1968); Hanes v. Comm'r of Soc. Sec., No. 11-CV-1991, 2012 WL 4060759, at *13 (E.D.N.Y. Sept. 14, 2012) (remanding because the ALJ's factual inaccuracies "suggest[ed] a potential misunderstanding of the record").

### B. Legal Standards

#### 1. Social Security Disability Standard

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). For a person to be under a disability, the impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration established a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. § 404.1520. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). The claimant bears the burden on the first four steps, but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

## 2. Treating Physician Rule

An ALJ's decisions regarding the weight to be accorded to each medical opinion in the record and how to reconcile conflicting medical opinions is governed by the treating physician rule. 20 C.F.R. § 404.1527(c).[1]

---

[1] In 2017, new SSA regulations came into effect. The newest regulations apply only to claims filed with the SSA on or after March 27, 2017. Accordingly, because plaintiff's claim was filed in 2013, the Court applies the regulations that were in effect at the time of filing. See, e.g., Ogirri v. Berryhill., No. 16-CV-9143, 2018 WL 1115221, at *6 n.7 (S.D.N.Y. Feb. 28, 2018) (noting 2017 amendments to regulations but reviewing ALJ's decision under prior versions); Rousey v. Comm'r of Social Sec., No. 16–CV–9500, 2018 WL 377364, at *8 n.8 & *12 n.10 (S.D.N.Y. Jan. 11, 2018) (same).

According to the treating physician rule, if a treating physician's opinion regarding the nature and severity of an individual's impairments is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ will credit that opinion with "controlling weight." 20 C.F.R. § 404.1527(c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). The treating physician rule gives "deference to the opinions of treating physicians based on the view that opinions based on a patient-physician relationship are more reliable than opinions based, say, solely on an examination for purposes of the disability proceedings themselves." Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993).

If a treating physician's opinion is not given controlling weight, the ALJ must consider various factors in determining how much weight to give the opinion, including:

(i) the frequency of examination and the length, nature and extent of the treatment relationship;

(ii) the evidence in support of the physician's opinion, including any medical signs, laboratory findings, and supporting explanations provided by the physician;

(iii) the consistency of the opinion with the record as a whole;

(iv) whether the opinion is from a specialist; and

(v) any other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

See 20 C.F.R. § 404.1527(c); Halloran, 362 F.3d at 32. An ALJ is required to give "good reasons" in support of her determination on the weight given to a treating physician's opinion, and the failure to provide "good reasons" for not crediting the opinion is grounds for remand. See Schaal v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998).

**C. Analysis**

In light of the Court's decision to remand this case for further proceedings, the Court recounts only the medical evidence relevant to that determination.

In a decision dated July 10, 2015, the ALJ found that although plaintiff had severe impairments of "paralyzed diaphragm, asthma and a herniated lumbar disc," he was not disabled because he still retained the residual functional capacity ("RFC") to perform "sedentary work as defined in 20 § CFR 404.1567(a) except he can sit five hours in an eight hour workday, stand three hours, can lift ten pounds occasionally, and cannot push, pull, kneel, bend or stoop." (Tr. 7-22.) In weighing the medical opinions, the ALJ gave both "little" and "great weight" to the opinion of plaintiff's neurologist and treating physician, Dr. Warren Spinner; "little weight" to the opinion of plaintiff's treating physician Dr. Ross Lipton, a colleague of Dr. Spinner; "great weight" to the consultative examiner, Dr. Andrea Pollack; and both "little" and "great weight" to two opinions by Dr. Osvaldo Fulco, a medical expert. (Id.)

Plaintiff argues that the ALJ improperly weighed the medical opinions pursuant to 20 § C.F.R. 404.1527, when he consistently gave more weight to the medical expert and the consultative examiner, and when he declined to follow the "treating physician rule" and gave less weight to plaintiff's treating physicians. (Pl. Br. 9-10.) As explained further below, the Court determines that remand is required for the ALJ to make further findings as to his RFC determination and his weighing of the medical opinions. If necessary, on remand, the ALJ should reconsider his RFC determination.

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); see Crocco v. Berryhill, No. 15-CV-6308 (MKB), 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017)

6

(stating that an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. § 404.1545(b)). In determining a claimant's RFC, "[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco, 2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)). An RFC determination must be affirmed on appeal when it is supported by substantial evidence in the record. Barry, 606 F. App'x. at 622 n.1. However, "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Martinez v. Astrue, No. 06–CV–6219, 2010 WL 331694, at *9 (S.D.N.Y. Jan. 28, 2010) (citing Social Security Ruling 96–8p, 1996 WL 374184, at *6 (S.S.A. July 2, 1996)).

1. **Medical Expert Dr. Fulco's Opinions**

On February 27, 2015, medical expert Dr. Fulco, who is board certified in internal medicine and pulmonary diseases, (Tr. 71), completed a Medical Interrogatory and a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 394-404.) Dr. Fulco initially assessed that plaintiff could lift and carry up to twenty pounds occasionally and up to ten pounds frequently, stand and walk three hours in an eight-hour work day and sit six hours in an eight-hour workday. (Tr. 399.) He also found claimant could frequently reach overhead, and push and pull, continuously reach in all other directions, handle, finger and feel, and occasionally operate foot controls, frequently climb stairs and ramps and balance, occasionally climb ladders and scaffolds, stoop, kneel, crouch and crawl, and frequently tolerate exposure to environmental conditions,

7

including "dust, odors, fumes, and pulmonary irritants." (Tr. 400-02.) The ALJ gave "some weight" to this opinion because "it was based on review of the medical evidence of record at that time," but gave it less weight than Dr. Fulco's opinion at the hearing. (Tr. 14.)

At the June 11, 2015 hearing, Dr. Fulco confirmed that his interrogatory was prepared upon reviewing and taking notes on plaintiff's medical records. (Tr. 70.) However, after referencing his review of medical literature, as well as medical records which appeared to be previously available to him, Dr. Fulco altered his assessment of plaintiff's abilities. Specifically, Dr. Fulco testified that he would have to:

> change . . . [his] assessment of [plaintiff's] ability to stand and walk let's say for 10 minutes at a time and one hour in an eight-hour day. The rest would still – the ability to sit would not change. There would be limitations in the ability to use the upper extremities for reaching and pushing and pulling.

(Tr. 74-76.) At the hearing, Dr. Fulco referenced medical evidence in the record and opined that plaintiff would have limitations in reaching "because of the right shoulder girdle" and that he would not be able to "reach[] overhead at all and reaching otherwise only occasionally, at least up to a third of the day." (Tr. 77.) Then, shortly afterwards, Dr. Fulco and the ALJ engaged in the following confusing exchange concerning Dr. Fulco's reassessment of plaintiff's RFC:

> A No, no, standing would stay at – what did I have before, three hours?"
>
> Q Yeah.
>
> A Standing will be the same as walking. He would be able to walk only for 10 minutes at a time and one hour in an eight-hour day.
>
> * * *
>
> Q Standing three hours walking 10 minutes at a time, and walking a total of one hour a day?
>
> A Correct, yes.

8

> Q So you're talking about that three hours of standing, one of them would be walking? Or is there an additional hour? It gets –
>
> A No, the – standing would be one hour – walk –
>
> Q Okay, so of the three hours, one hour is – and sitting, is there any limit?
>
> A Sitting would be the same. There's no limitation. He's not short of breath while sitting.

(Tr. 78.)

In his decision, the ALJ interpreted this ambiguity to find that Dr. Fulco determined that plaintiff "can stand three hours in an eight hour workday, walk one hour in an eight hour workday, sit without limitations, and can occasionally use the upper extremities for reaching and pushing and pulling and cannot reach overhead." (Tr. 14.) The ALJ gave this opinion "great weight as it is well reasoned and explained and consistent with the medical record." (Tr. 14.)

### a. Weight Given to Dr. Fulco's First Opinion

As previously mentioned, the ALJ gave Dr. Fulco's initial opinion "some weight," "as it was based on review of the medical evidence of record at that time." (Tr. 14.) This statement suggests that the ALJ may have believed that Dr. Fulco reviewed additional medical evidence at the hearing. However, it does not appear from the record that in revising his opinion, Dr. Fulco reviewed new medical records that were previously unavailable to him. Rather, it appears that Dr. Fulco simply corrected his original opinion after consulting the records previously available to him along with additional medical "literature." (Tr. 74-76.) The Court questions why any weight should be given to Dr. Fulco's first opinion, as Dr. Fulco himself appeared to indicate that his first opinion was erroneous. At the very least, a more complete explanation is necessary before "some weight" could be accorded to Dr. Fulco's first opinion.[2]

---

[2] It is not clear that Dr. Fulco's first opinion, which was only accorded some weight, was a substantial factor in the ALJ's ultimate RFC determination.

On remand the ALJ should explain the basis for affording Dr. Fulco's initial opinion "some weight," and if appropriate, reconsider the weight afforded to the opinion as well as plaintiff's RFC determination.

### b. Ambiguity in Dr. Fulco's Second Opinion

As mentioned above, the record contains an ambiguous exchange between Dr. Fulco and the ALJ, where in stating his opinion, Dr. Fulco appears to first state that standing and walking would be the same length of time, and that plaintiff would be able to walk for "one hour" in an eight-hour day. He then appears to confirm the ALJ's understanding that standing would be "three hours," but subsequently corrects the ALJ who questions whether standing would be three hours, stating "standing would be one hour." (Tr. 77-78.) The ALJ's decision does not acknowledge this apparent inconsistency and does not make clear why the ALJ ultimately determined Dr. Fulco's opinion to be that plaintiff "can stand three hours" in an eight-hour workday. (Tr. 14.)[3]

On remand, the ALJ should reconsider this testimony as well as the amount of weight afforded to this portion of Dr. Fulco's opinion, and if necessary, reconsider plaintiff's RFC determination.

### 2. Plaintiff's Reaching Limitations

As noted, the ALJ gave "great weight" to Dr. Fulco's second opinion, which included the limitation that plaintiff "can occasionally use the upper extremities for reaching and pushing and pulling and cannot reach overhead." The ALJ's decision, however, failed to provide a specific reason for not adopting the reaching limitations included in Dr. Fulco's second opinion, to which he afforded great weight. The ALJ's failure to address this point is noteworthy because there may

---

[3] The Court notes that even if Dr. Fulco intended to state that plaintiff could only stand for one hour, Dr. Spinner, plaintiff's treating physician, opined that plaintiff could stand for three hours.

10

be some evidence in the record supporting a reaching limitation. Dr. Lipton, plaintiff's treating physician, for example, stated in records from a neurology outpatient visit on March 13, 2013 that:

> [a]ssessment of [plaintiff]s shoulder girdle, hip girdle and spine revealed a variety of trigger points and regional segmental dysfunction of the spine. In particular, cervicothoracic and mid-thoracic dysfunction was noted with very tight muscles in the region of the diaphragm...Significant thoracolubar spinal segmental dysfunction as well as sacroliliac joint tenderness was noted during palpation, friction rub and multi-vector passive movements.

(Tr. 340.) Dr. Fulco appears to have relied on this report in changing his assessment to determine that plaintiff had reaching limitations. (Tr. 75-77.) The Court notes that while Dr. Spinner, plaintiff's treating physician, did not identify any reaching limitation in the "Lumbar Spine Impairment Questionnaire" he completed, the questionnaire did not contain any questions concerning reaching. (Tr. 374-80.)

Upon remand, the ALJ should address this aspect of Dr. Fulco's assessment and the record, and if necessary, reflect any additional limitations in the RFC.

3. **Opinion of Dr. Spinner, Plaintiff's Treating Physician**

   a. **Dr. Spinner's Opinion Concerning Neck Position**

Dr. Spinner, a neurological specialist and plaintiff's treating physician, had been physically examining and treating plaintiff every few months for nearly two and a half years at the time of the December 30, 2014 hearing. (Tr. 374.) In the "Lumbar Spine Impairment Questionnaire," Dr. Spinner opined that plaintiff's condition "interfere[d] with the ability to keep the neck in a constant position (e.g. looking at a computer screen, looking down at the desk)." The ALJ failed to address this portion of plaintiff's treating physician's opinion and what if any impact it would have on plaintiff's ability to perform sedentary work.[4]

---

[4] The Court notes that plaintiff's counsel has not identified what specific medical evidence in the record supports the alleged neck limitation.

Upon remand, the ALJ should address this specific aspect of Dr. Spinner's assessment and if necessary, reflect any additional limitations in the RFC.

### a. **Dr. Spinner's Opinion Concerning Unscheduled Breaks and Absence**

In his decision, the ALJ gave "great weight" to Dr. Spinner's assessment of plaintiff as being able to sit five hours in an eight hour workday, stand and walk three hours in an eight hour workday, occasionally lift and carry ten pounds and cannot push, pull, kneel, bend or stoop, "as it is based on personal treatment of the claimant and is supported by the clinical and objective evidence." (Tr. 15.) The ALJ, however, also gave "little weight" to the portion of Dr. Spinner's opinion that plaintiff is incapable of low stress work, would need to take unscheduled breaks and would be absent more than three times a month from work, stating that it "is inconsistent with the medical reports and the claimant's activities of daily living." (Tr. 15.) However, the ALJ failed to identify, with any specificity, what evidence in the record and what particular aspects of plaintiff's daily activities are inconsistent with this assessment.[5]

On remand, the ALJ should identify, with at least some specificity, what evidence in the record is inconsistent with Dr. Spinner's assessment that plaintiff would need to take unscheduled breaks or be absent from work three times a month, and if necessary, reconsider his RFC determination.

### III. CONCLUSION

For the reasons set forth above, the Court GRANTS plaintiff's motion for judgment on the pleadings, DENIES Commissioner's motion for judgment on the pleadings and REMANDS for proceedings consistent with this opinion. On remand, the ALJ should make new findings

---

[5] While the ALJ did not specify what medical evidence contradicts Dr. Spinner's opinion on this point, the Court notes that plaintiff's counsel has not referred the Court to any medical evidence that supports this portion of Dr. Spinner's opinion.

concerning plaintiff's RFC that address the deficiencies identified above, and if necessary, reconsider plaintiff's RFC determination.

**SO ORDERED.**

Dated: July 5, 2018
Central Islip, New York

                 /s/ JMA
              JOAN M. AZRACK
              UNITED STATES DISTRICT JUDGE